I am Assistant Attorney General Nick Moeller of the people of the state of Illinois. Now the heart of this case is defendant's claim that the trial court did not strictly comply with section 5-3-1 of the Corrections Code because it did not specifically make certain fact findings that were required to allow a waiver of the written PSI requirement. However, because defendant didn't raise this claim in his motion to withdraw his plea and vacate the judgment, his claim is procedurally defaulted under long-standing principles of forfeiture. Sophanavong May I ask some real fundamental questions first before we get into your forfeiture argument? This Court has never really spoken on the issue here about when there is an error in the sentencing hearing and an error that we were talking about in terms of a violation of 5-3-1. Certainly in the Overbay case, this Court said, and that was not a plea case. That was after a trial. The Court said the new statute requiring a pre-sentence investigation is unconstitutional and I am not going to use it. This Court said no. The statute says you have to use it, et cetera. That case had nothing to do with the interplay between 5-3-1 and negotiated pleas, correct? Yes, Your Honor. So this Court has never really weighed in on that. Other courts have, perhaps, but this Court hasn't. Right, Your Honor. On the underlying how does 604Ds bar apply, there is currently just the appellate court split in which the second, third, and fifth districts have ruled that 604Ds does not categorically bar claims after a negotiated plea deal. And the First District has said it does. So don't we have to start there before we get to forfeiture, et cetera? Don't we have to decide what happens when a defendant raises a claim that his sentencing hearing was flawed because there was an error? Yes, Your Honor. We have to start there, right? Yes. And so in the Johnson case that we just decided recently, it's not the same error, but the argument was made there that there was an error in the sentencing hearing. And this Court then had a long discussion about the history of negotiated pleas and case discussion and how the rules have changed. And ultimately, this Court said, well, whatever the error was that Mr. Johnson is raising in his sentencing hearing, we can't reach the merit of that because this was a negotiated plea. Everybody agreed. And so the only way Mr. Johnson to ask the Court to review the merits of any alleged violation in the sentence and the error in the sentencing hearing is that he has to move to withdraw his plea. I think I would say there is a distinction there, and it's the idea that what 604D bars categorically is not sentencing challenges. It's excessive sentencing challenges. And why does the Court say that? The Court said that because generally, in a negotiated plea, the defendant cannot challenge a negotiated plea because there's been an agreement here. And generally, they cannot challenge a negotiated plea unless they ask to withdraw the plea as well as the sentence, the piece. And my answer would be this is not going to happen very frequently, and I could not think of an example beyond Section 5-3-1 off the top of my head. But I think it's important to look at Johnson and see when this Court was tasked with asking what's an excessive sentencing claim. And it's, of course, not just does the defendant want an excessive sentencing claim. It was a question of what is the defendant actually seeking to do. And in that case, the defendant is seeking to have an entirely new sentencing hearing, a new sentence. But he didn't want to withdraw his plea. He wanted to stick with his plea. He got a good deal. He didn't want to upset the Court, right? Right. Now, so we do have cases, Bryant is one that everyone relies on from the appellate court, where the defendant has, in fact, unlike Mr. Johnson, moved to withdraw his plea. And the Court now looks, goes ahead and says, well, he's going to move to withdraw the plea. And in Bryant and these other cases, the Court talks at length about why we were very careful about allowing a negotiated plea to be vacated, that there's finality, that this is a very serious decision to plead guilty. And we're only going to allow a defendant to withdraw his plea when there is manifest injustice. I think that's the language of the cases, though. So in Bryant, there, he raised all sorts of arguments about why his plea should be withdrawn because there were very serious violations, he argued there. He says that during the plea hearing, the trial court failed to inform him about the potential sentences in the case. And these arguments all went to the very heart of voluntariness. And yet, in the Bryant case, the Court said, well, you know, he hasn't shown any prejudice here, and even though he's talking about how his plea wasn't knowing involuntary punishment, the Court there said, he hasn't shown any prejudice, and so we're going to say that it's harmless, and so we're going to say there's been no manifest injustice, and so we're going to deny his motion to withdraw the plea. Basically, that's what happened in Bryant. And then it ends there. And I think it's because this has a unique remedy, as well, why it's different. This is really my question. This Court has never fashioned that remedy. Unlike any other case I've ever seen, where there's been an argument that there is an error in a sentencing hearing, the Court does what I just described what Bryant did, and then ends the case. But somehow, the appellate court has decided, this kind of error, this kind of error, we're going to do something else. We're going to vacate the sentence, remand, and have a completely new hearing, and perhaps allow the defendant to withdraw his plea. Why, when we don't do that in very serious allegations, where the defendant says, I didn't understand what was going on in the plea, we just wipe that away and say, well, we're not going to entertain that. But somehow here, the appellate court has created a completely new remedy that doesn't exist in any other case where there's been an argument that there's a violation in the sentencing hearing. I would say that there might be a conflation there of two different principles and motivations by the Court. The bar on the excessive sentencing claim is out of contract law type considerations. And then the bar against overturning your plea would be a separate issue other than the 604B's saying you can't have excessive sentencing. Approaching the first of, or I guess the more basic one of why they can't withdraw the plea is because this is a unique situation in which what is being challenged is not the plea itself, it's the court's acceptance of the plea. And in these other cases, there's been an error by the trial judge in the sentencing. Yes, Your Honor. In Johnson, there was an error by the trial judge in the sentencing hearing. In Bryant, there was an error by the trial judge, and the court said that's not a basis to withdraw the plea. Right, and I think it would be... Why here? Why is this so different from these other really fundamental kind of arguments? I think the difference would be in this case, the defendant does not automatically get to withdraw his plea when this goes back. What happens is there is a procedural error in the actual accepting of the plea. The legislature has made clear that they're very interested in the court being informed when doing this. And so there's less of a concern over the overturning the plea deal or depriving the state of what it's bargained for. Because what is happening is we're not resetting the deal, we're not changing the deal. We're resetting back to the point where the trial court had a job to approve the deal. And if the trial court on remand doesn't approve the deal, what happens? Then it would be back to the beginning from that point. The plea would be withdrawn? Yes, Your Honor. So at the end of the day, this is all about whether or not the plea is going to be withdrawn or not? Yes, but it isn't whether the plea can be withdrawn. I think the difference would be that all the jurors in this case, there is prudence that deals with the trial court's accepting of the pleas or not. It includes things like the trial court is not allowed to accept a plea and then not act in accordance with the plea. So there is a special role for the trial court in accepting pleas or not. And so I think that just puts it in a different category from saying, this is a defendant who has gotten cold feet and changed their mind. This is not the issue of it's not a voluntary plea. It is a specific statutory procedural claim that the legislature placed some importance on. And that there is an existing remedy, at least in the state's argument, of it can be brought before the court through a motion to withdraw or vacate the judgment. And in doing that, the trial court is then allowed to view whether the error was grave enough that it's something that needs to be overturned much the same way it would those other arguments in a voluntariness or knowing argument. The trial court would be able to evaluate it and see if it rises to the crime of 11. So that's all the state is arguing would be the proper resolving of the split. It's not to say, in this case certainly, that what's likely to happen is that the defendant will get to withdraw his plea, particularly on the facts of this case. The trial court was not made aware of just one sentence for a felony, and it was a probationary sentence. Why are we going through the charade of sending the case back? If everybody agrees, what's going to happen is the trial court is going to say, remember, this is a vicious murder case, a kidnapping that was dismissed, violation of protection was dismissed, agreed to 55 years. Trial court said, I understand that he has a marijuana conviction and a seat belt conviction and did not say, and his sentences were so-and-so. So this is cases we go back, and the trial court's going to say, oh, now I know what his sentence was for marijuana and for seat belt, and I'm going to upend a negotiated plea in a murder case? Well, there I think I've made clear the state's not actually arguing that in this particular case it should go back. I think part of the reluctance to do so is that in the Supreme Court, this is not the place to be having this discussion, and definitely not in the first instance. So that is why the states argue that forfeiture under a different part of 604D prohibits under procedural default this particular case. The state does acknowledge, though, that there should be a way for Section 5-3-1 to be remedied if it's not followed through with, and that in 99% of cases it's going to be, if it's an error, they bring it to the attention of the trial court. The trial court takes all that information into account and makes the decision that it's always tasked with making with negotiated plea deals and whether or not to accept it. So this is not going to unleash overturning negotiated plea deals any more than the original required hearing by the court in accepting it. Mr. Mohler, your argument seems to be a little counterintuitive to me, so I'm going to give you the chance to clear it up. On the one hand, you seem to be saying that 5-3-1 requirement is not a right personal to the defendant because the trial judge should have all the information at his or her disposal, and it's so important we won't let you waive it, the affirmative relinquishment of the right. But on the other hand, you're saying if you don't raise it in the 604-D motion, you can forfeit it. So it's so important it can't be waived, but it can be forfeited in the 604-D context. So I haven't heard nor seen, so I'm going to give you the chance to explain this argument, how it squares with the purpose of Section 5-3-1, which is to ensure that the circuit court has the information that it needs to accept or reject a negotiated plea in the exercise of its sound judicial discretion. First of all, did I misstate your argument? And if I didn't misstate your argument, how does it square with the purpose of 5-3-1? I think I would take issue with some of the implied conclusions there. I think it's about this hard-to-nail-down-sometimes distinction between waiver and forfeiture. As this Court has noted multiple times, the problem is in criminal cases, courts up from the circuit to some instances that this Court's opinions. We conflate forfeiture, we conflate waiver. The reason you can't waive this claim is because it has to do with rights. Waiver is you affirmatively giving up a right, and this Court actually said it's unwaivable, because it's not that the defendant doesn't have some right in this, it's that it's kind of a shared right between, I think, the nebulous public and the defendant. The reason why you can't waive it but you can forfeit it, I think if you look at the difference between waiver and forfeiture, it becomes a little easier to grasp. And that's some things can be so important you can't waive because there's no coming back from waiver. Other than attacking whether there was actually waiver in the first place, things like plain error cannot get a defendant out of a waiver situation. However, when you have forfeiture procedural default, there are doctrines there to act as outlets if there has been some sort of grand miscarriage of justice. Plain error, which does not apply in waiver, does apply in forfeiture. So if we're in an instance where something is actually a manifest miscarriage of justice, it's actually something that rises to structural error, fundamental error, forfeiture can be overcome. And because it can be overcome, that's why you may allow forfeiture in cases that you wouldn't allow waiver. Because you'll have an ability to correct that if the error is large enough. It just happens to be in this particular case. It's not an instance where there's really any prejudice that can be found. And so that's why the state is arguing that forfeiture should be upheld. But also in the interest of resolving the split and making the law clearer, the state believes it would be best to address how Section 5-3-1 is meant to operate. And the way the state has decided it thinks is best is to acknowledge, yes, there can be errors here. There should be some opportunity to rectify it. But to do that, you're going to have to follow the rules. You're going to have to bring it to the trial court's attention, let the trial court decide whether or not an error is made. And in doing that, you're going to take care of most of these cases, because in most of these instances, the trial court's going to see it and say, okay, I'm more fully informed. And once again, I find that this is not a negotiated plea deal that needs to be rejected. And I think that's... And if the court did do that, if the court found in that 1% that this is the kind of case to reject the plea, what would happen? The state's opinion would be if the court...the court would be allowed to reject it. And I think... And then what happens next? And then the plea deal would...it would be the way... And then you have to set the case for trial. Right. It would be exactly... And so seven years after the plea, you're now going to have to find your witnesses and start over. Well, I believe under the confining it to a 604-D motion, having to have it there, I think there you would have less instances of it being that large a distance. And you have these safeguards to keep it from being like it is now, something all the way down the line where it might need to be... And maybe that's why it should be raised in the initial pleading. Yes. Because what happens if it's not raised in the initial pleading when the defendant has tried for years to withdraw his plea, can't come up with a theory, and now comes up with this theory, we're in a position where perhaps the plea will be vacated and then the state will have to reassemble its case and try to try the defendant on murder? Yes, Your Honor. And that's why the state is arguing that the proper vehicle for this would have been to raise it immediately in the post-plea motion. And that's why we believe forfeiture should stand. It's to allow a remedy for what the legislature thought was something that should be remedied, but to put the normal safeguards you have on it in many other cases. Forfeiture applies in almost all instances, and it's to keep things like this happening. And so the state, in arguing forfeiture, is just trying to make clear that, one, there is a split that needs to be resolved. The state has put forth its opinion for the best way to resolve that, and it thinks it is required of defendants to bring this type of error to the trial court's attention and allow it to be solved by the court best equipped to solve it and to promote judicial efficiency. So unless the court has any further questions. Just procedural. At the lower court, you were arguing Haywood was correct. Yes, Your Honor. You've abandoned that, and now you're arguing forfeiture. Did you raise forfeiture below, or did you forfeit that argument? Your Honor, we did not raise it below, but the defendant has not raised forfeiture itself, and therefore we have kind of a tree of forfeiture going up and down. So I think the most important thing to do is to recognize the issue in this case, whether forfeiture of the defendant or the state is forgiven, is the question of whether forfeiture applies at all. I think that is the most important thing, but for the judicial economy reasons already discussed. You may continue. For the economy reasons initially discussed, forfeiture in this case is best to be enforced against the defendant. And so we would ask that you refer Steve to the court for judgment and uphold the lower court's decision. Thank you, sir. Mr. Durango? Good morning, Your Honor. Counsel? Your Honor, to answer your question, this case goes to the power of the trial court, the circuit court, to accept or reject the plea. Counsel, can you say your name? Oh, I'm sorry. Mr. Durango. Your Honor, Santiago Durango. I represent the appellee in this case, Mr. Phu Van Sokpanavong, and I am assistant defendant with the Office of the State Appellant. Thank you. I apologize for that. Okay. This case goes to the power of the court to reject or accept a negotiated guilty plea. In order for the court to be able to assess whether the fully negotiated guilty plea is acceptable, it must be fully and correctly informed of the defendant's criminal past history, including his sentences. If the court does not have that information, what will occur at some point is the same problem that Section 531 sought to correct. And as the legislative history behind the section shows, as this court pointed out in Youngby, defendants were being sentenced to probation because the court was not fully informed of their prior criminal history. So although they should not have been resentenced in subsequent offenses to probation, they were getting probation when they should not have been getting probation due to the court's lack of knowledge of the defendant's prior criminal history. Are you asking for the defendant to be resentenced to a higher sentence? Well, that is a power. I'm not asking for that. And the hope, of course, is that he will get a lower sentence given his minimal criminal history. After the plea has been withdrawn. If the plea is withdrawn. That is your ultimate goal is that the plea will be withdrawn and he'll be sentenced to less than the negotiated plea. That is correct. As the evidence court pointed out, however, many times because this is for the purpose of the circuit court judge, Section 531 is intended to enlighten the circuit court judge. Many times the question is not whether the sentence was too low, but whether the sentence was too high or not. Now, in this case, the power of the court to accept or reject the guilty plea is at play. But also, we have a defendant's due process right to be sentenced based on accurate information. So, if his defense counsel is not fully aware of his prior history, if the state does not inform the court of the prior history, of a correct prior history, if the court is not aware of that correct prior history, the validity of the negotiated guilty plea is called into question because it may have been based on incorrect information. Don't we avoid that argument in all these other cases? There are other serious allegations. The defendant has been allowed to plea and be sentenced on very serious due process violations. Yes. And the court looks at that and determines whether or not there's prejudice shown, so that the plea should be withdrawn, and then when the court says no, it's over. None of these other cases is this remedy that now we're going to send the case back and start over again to allow the defendant to have an error-free sentencing hearing. This is the only situation, apparently, where that's done. Why? Because of Section 531. Because of the concerns that Section 531 sought to remedy. The court not being fully and correctly informed of the defendant's prior history, and therefore a defendant not being sentenced based on accurate information. Now, we're dealing with a fully negotiated guilty plea, so what we're dealing with is not just the correctness of the sentence that was imposed, but it's more than that because we're dealing with the correctness of the guilty plea. So, again, it goes to the power and the obligation, really, to inform the circuit court judge of all of the relevant facts he or she will need to either accept or reject the guilty plea. If it turns out that, based on new information, the correct information, the court may have accepted the plea anyways, then the plea stands. But if, after finding out the correct new information, the court decides that it would not have accepted the guilty plea, and this happens, then the court can reject the guilty plea. But it goes to the power of the court to be fully and correctly informed. I do not believe we can have a negotiated guilty plea process that does not violate due process if inaccurate information is provided to the circuit court judge. What was the range of sentencing in this case, before the plea? Oh, before the murder? It was 20 to 78. So, in this case, obviously, there were concessions by the state, dismissing charges, and recommending a lower sentence. Yes. Are you saying here that there was inaccurate information, or is it that the court wasn't apprised of the sentence that the defendant received on his priors? Right. The court was not fully informed, correctly informed, of the priors. The defendant had only been sentenced to probation previously. I suggest, Your Honors, that the interplea between Section 531 should be, with negotiated guilty pleas, should be viewed as being of the same character as compliance with 604D. If there, in this case, and in other cases, when this situation arises, counsel has a choice. Ask for yet another 604D remand because, obviously, there was no correction of the defect. It appears that counsel did not properly read the sentencing transcript and did nothing to correct this obvious defect. So, under 604D, due to the defective certificate, it would go back. Going back under Section 531 is of the same character. It is correct what appears to be a defect that should have been addressed in the trial court. And that error is on the face of the record, from day one. On the face of the record. And six years have gone by, and now the verdict is being made. That is a problem. But, again, it is, let's say I would have raised this as 604D, a failure to comply with Rule 604D, it would still be six years. And if, as the State argues, 531 cannot be used as a vehicle to address this error, then a fellow constable will simply resort to Rule 604D to have the error addressed in the trial court. It did go up and back on a 604D. Right. And in fact, in order to, for judicial efficiency, instead of having it bounce back again, that was the mistake that would have been raised in another 604D remand. And the point was to get to it as soon as possible. Isn't this a classic example of forfeiture, where there were two motions to withdraw guilty pleas, and this was not addressed until later on appeal, the 5-3-1 problem? Yes, Your Honor. So we have to find that it is not forfeitable. And so, again, that would have been subject to a 604D remand if we had gone that route. And the other argument in that regard is that under Section 531, it's not subject to forfeiture. Again, because of the importance of informing the judges for the benefit of the courts, the court is fully informed. I would add that in Young v. the same analysis, the same problem the court is addressing right now, was present. Because in Young v., the trial court at the bench trial had certified copies of the defendant's criminal history, and the parties stipulated to that criminal history. So yet this court sent the case back for compliance with Rule 531, finding no forfeiture, that it could not be forfeited under the plain language of the statute, where the record shows that the court was aware of the defendant's prior histories. And the Evans decision, which did address fully negotiated guilty pleas, and I think laid down a very good road map for how to address these cases, pointed out that the time for informing the court of the defendant's prior history is at the sentencing phase. That is a temporally relevant time. Not before, not after, but when the court is assessing whether the sentence is appropriate for that. It doesn't appear that the appellate court here is going to be surprised if the same sentence stands, right? And the reason I ask that, it seems to me that a lot of the questions and comments of this court may have been thought by this appellate court majority, right? Because they don't vacate the guilty plea. It looks like they felt they had to have some type of vehicle to be able to say that 531 is required in all instances. Is that how you see this, or am I wrong there? I see 531. And let me just say, because of their further discussion, I mean, they vacate and remand, and then they give further discussion on, hey, if after looking at the priors and the PSI, you determine that the negotiated plea was reinstated, if not vacate his guilty plea. Yes. Were they looking for just some vehicle to be able to say, in your opinion, were they looking for some vehicle to be able to say, it's mandatory, it's required, you have to do this? Yes. I view, and I think what the court, I think what motivated the court in that regard is viewing Section 531 as being an apocalyptic rule intended to protect the courts. It is very likely that if this goes back, the judge, being fully informed of the defendant's prior history, will accept the fully negotiated guilty plea. But if it's not applied every time, then we'll get into the situation of substantial compliance, harmless error review, which is a case-by-case review of each record on appeal, which this court rejected in Harris. That is time-wasting. It wastes judicial resources. It's better to simply have a simple rule that Section 531 must be complied with, send it back. That's why you're saying it's analogous to what we did with compliance with 604-D. Exactly. Send it back. Because that's the other option. There are two doors that a defendant can walk through or choose from in an appeal in a situation like this. You can do it through a 604-D remand because there was an error in the trial court that should have been addressed in the 604-D motion. So there was no compliance with 604-D. So a public counsel can go through that door. Or, in this case, for the sake of efficiency, use Rule 531 because it's clear from the language of the rule that it's mandatory. You just send it back. They serve the same purpose, essentially. You're asking for more than just this hearing. You're asking that the plea be vacated. No. Then what's the purpose of having this hearing? If the plea is not going to be vacated, what are we doing? The remedy is to send it back. And have the trial court be fully informed of the correct prior history of the defendant. If the court, after being fully informed, finds that the guilty plea is acceptable, that's it. If the court finds that it would not have accepted the guilty plea had it been fully informed, based on the correct history of the defendant, then our suggestion is that the court vacate, give the defendant the option of just continuing with a non-negotiated guilty plea. And if he does not want to do that, then allow him the choice to withdraw the guilty plea. And the state would be able to reinstate all of the charges that were not laid and then could be arguing for 80 years instead of 55. Exactly. And that's what the defendant wants. Well, he may want that, or he may want to just persist with the guilty plea, but this time being unopened with the guilty plea. Or go to trial. Or go to trial with all of the charges reinstated, yes. Which, again, if 640 is the door that public counsel chooses to go through, that is a possibility as well. It's just whether to go through the 604-D door or through the Section 531 door. So what would the hearing look like? In other words, would the state presents what the defendant's prior record is. The court says, I would have accepted that. I would have accepted the plea. The hearing is over. Thank you for that question. Or does it come to the defendant gets to argue, well, you shouldn't have accepted that plea because of X, Y, or Z. No, Your Honor. What we suggest is a very economical and short hearing where the court is fully informed, where the court is provided with the omitted information, with the information that should have been provided with originally. And if the court says, okay, now that I have this information, I accept the plea. That would be a very short hearing. If I had only known back then, I would have given him more time. Are we trying to get into the mind of the judge as to how the judge is weighing all these factors? How is this hearing going to look? Well, it goes back. The judge is fully informed. The judge says probation, well, one option. The judge says, based on this new information, the plea, I concur with negotiations. If the judge thinks probation was too low for this repeat offender, serially repeat offender, then the judge would say, I cannot accept this negotiated guilty plea. I give you the option of keeping your guilty plea, but as an open guilty plea. Or you can move to withdraw your guilty plea or allow you to withdraw your guilty plea, but then the state can reinstate the charges or whatever and take you to trial. That's not what we envision. And again, this would be something that might happen with a 604 D agreement. Again, it's a choice between which door to use in order to give meaning to the court's power to accept or reject a negotiated guilty plea. If the court has no further questions, we would ask that the public court's decision be made. Thank you, Mr. Franco. Thank you. Mr. Millar. Now, I think part of the reticence about this case is this idea that the appellate courts have kind of fashioned a remedy, that it's hard to find where it comes from. But that's kind of just a result of the fact that we don't have a case law answer on what we do about this Section 5-3-1. It's a particularly unique statute in that it's written fairly strongly that it's mandatory. It's written fairly strongly that you cannot waive it at that stage. And so this has all come about because we've got this special statute, and there's not yet a Supreme Court ruling to tell appellate courts what to do. And if the Supreme Court takes the route outlined by the State today, I think it does away mostly with that remedy. Because in both acknowledging that there can be this 5-3-1 error, but also acknowledging that it is something that can be forfeited, what happens is that when an error occurs, either the defendant brings it up in his motion, the court is now informed because the error is strictly one of whether the court had all the information or not. So either they bring it up in their motion, the court now knows, and there's no longer an error to appeal, or I think the only way to violate it at that point would be if the court were for some reason to say, I acknowledge I didn't have that information, I choose not to address it, and then it gets to the appellate court and it's a completely different sort of claim than what we have now. This is pretty unique, though, isn't it? I mean, it's unique in the sense that when we're talking about waiver and forfeiture and defendant's rights, it's their knowledge that's involved, right? They have to have knowledge of this or knowledge of that before they can make an assessment and make a determination. But Youngby, right, we said in Youngby in 1980 the purpose of this is to ensure that the trial court has all necessary information about the defendant before the trial court imposes the sentence. So you have a defendant right and you have, for lack of a better term, a trial court's right to make sure that they're imposing the right sentence. And I think that's why we have, it's a tough situation and that's why there's a conflict in the districts, right? Right, Your Honor, and I think, so there's definitely two rights or one joint right that has to be resolved. What do we do when it is not respected, if it's not followed? And if the court holds that it has to be brought up before the trial court first, the bringing it up pretty much resolves the error. If the error is the court didn't know something, then the motion itself will cure the error, assuming the court then rightly says, okay, I will take this into account and I still accept or I reject the plea, or the only way there would still be some sort of error is if the court says, no, I'm not going to do that. And then it becomes easy for the appellate court to say, well, that's a different kind of error. It's been brought up, and that is something we will send it back for and directly tell the court to consider the way it would in other sentencing issues, like if for some reason the court had said it's not going to consider mitigation in a different sentencing case. And so by acknowledging that there is this error and saying that the proper remedy for curing it is to just bring it up to the trial court, it does away with all this questionable appellate court remedy because now the remedy is what best serves the court. Just tell the court what it didn't know, and the remedy is gone. How does this case differ from People v. Harris? That was a 1985 case where we said certainly if an express waiver is invalid, absent Section 5-3-1 requirements, waiver cannot be inferred, or maybe forfeiture, but the word used was waiver cannot be inferred from defendant's failure to object in the case at bar. I think the fine line distinction there would be it's the difference between it's hard to, if you're saying defendant took place in this actual sentencing hearing without raising a contemporary objection, that would be more along the lines of you're making an argument about waiver of acquiescence, and so you're still in this idea of waiver as giving up an affirmative right. I think by removing it to a post-plea motion, you're in a slightly different factual situation. You're not asking the defendant. It's not just a reiteration of did the defendant waive that right or not. It's a question of are they following the proper procedures necessary to perfect an appeal, and certainly, although it would be a slightly different situation, if defendant didn't bring the claim up until the 31st day after the judgment, the fact that it's not a waivable claim wouldn't change the fact that they've now lost it because jurisdiction is gone, because they did not follow the rules, and so I think the main difference there is that waiver is about they cannot just say, I give up this right, but with procedural default, this court can still say it's best to make defendant follow a set of rules that perfect the appeal that allows the proper court to judge the error at the place that's situated and avoids these long, drawn-out appeals about it. Does this come down to whether we see this 531 claim as a separate statutory stand-alone requirement that is not subject to 604D versus that is subject to 604D? I think I'm a little confused by the question, Your Honor, just because 604D has several different paragraphs, the one of which we state is conceded we don't believe applies in this case, which is the excessive sentence bar. That one we don't believe applies. It's applicable to the literature provision that we do believe would apply. As to, I would like to say, to the range of sentence, the State's understanding is that it was 45 to 85 years because what he ultimately pled guilty to was murder, which had a range of 20 to 60, and then there was a mandatory firearm enhancement, which was an additional 25 years. And during the plea deal, what happened was three counts of murder, one count of violation of a order of protection, and one count of aggravated kidnapping were dismissed as part of the plea. And so that's another reason why, in this instance, forfeiture, this is not a case where prejudice would have been shown. This is not a case where the trial court would have changed its mind. It was a sentence for 10 years over the minimum. There were many charges dismissed as a reason. And as to the State's forfeiture, I would just say that, while we did not bring this up before briefing in this court, it should be acknowledged that right now the issue is fully briefed. It is something that's going to recur to split already there in the circuit courts. And with the prevalence of negotiated plea dealing, it's likely to come up again. And so without resolving the issue now, it would just be more of this leaving it to the appellate court's kind of duct tape solution to the 5-3-1 problem. So unless there are further questions, the State would ask that this court reverse the appellate court's holding and affirm the judgment to trial. Thank you. Thank you. Case number 124337, People v. Sobhangafong, as agenda number four, will be under advisement. And thank you, Mr. Mueller and Mr. Durango, for your arguments today.